IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES A. LAWHORN,                          :
                                           :
                    Petitioner,            :
                                           :
          v.                               :     Civil Action No. 19-674-CFC
                                           :
ROBERT MAY, Warden, and                    :
ATTORNEY GENERAL OF THE                    :
STATE OF DELAWARE,                         :
                                           :
                    Respondents.           :

_____

James A. Lawhorn.  *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

_____

## **MEMORANDUM OPINION**

September 14, 2022
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner James A. Lawhorn's Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.  (D.I. 3)  The State filed an Answer in opposition.  (D.I. 15)  For the reasons discussed below, the Court will deny the Petition.

## I.     BACKGROUND

### A. Factual History

In March 2015, a New Castle County grand jury indicted Petitioner for first-degree rape, second-degree rape, two counts of first-degree sexual abuse of a child by a person in a position of trust, three counts of second-degree sexual abuse of a child by a person in a position of trust, three counts of first-degree unlawful sexual contact, and ten counts of sex offender unlawful sexual conduct against a child.  (D.I. 16-3 at 9-17)  On September 17, 2015, Petitioner pleaded guilty to one count each of sex offender unlawful sexual conduct against a child and first-degree unlawful sexual contact.  (D.I. 16-3 at 18-36)  The Superior Court sentenced Petitioner in January 2016 as follows: (1) for sex offender unlawful conduct against a child, to life imprisonment; and (2) for first-degree unlawful sexual contact, to eight years of Level V incarceration, suspended for probation.  (D.I. 16-3 at 43-47)  Petitioner appealed, and the Delaware Supreme Court affirmed his convictions and sentence on November 9, 2016.  (D.I. 16-8 at 1-9); *Lawhorn v. State*, 151 A.3d 449 (Table), 2016 WL 664922, at *4 (Del. Nov. 9, 2016).

In June 2017, Petitioner filed a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61, asserting claims of ineffective assistance, along with a motion to appoint counsel.  (D.I. 16-12 at 42-50)  The Superior Court denied both motions on December 11, 2017.  (D.I. 16-9 at 16-23)  The Delaware

Supreme Court affirmed that decision on September 13, 2018. *See Lawhorn v. State*, 194 A.3d 906 (Table), 2018 WL 4378705, at *1 (Del. Sept. 13, 2018).

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

3

> (B)(i) there is an absence of available State corrective
> process; or (ii) circumstances exist that render such process
> ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). This exhaustion requirement, based on principles of comity,

gives "state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." *O'Sullivan*,

526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

A petitioner satisfies the exhaustion requirement by demonstrating that the

habeas claims were "fairly presented" to the state's highest court, either on direct

appeal or in a post-conviction proceeding, in a procedural manner permitting the court

to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005);

*Castille v. Peoples,* 489 U.S. 346, 351 (1989). If the petitioner raised the issue on direct

appeal in the correct procedural manner, the claim is exhausted and the petitioner does

not need to raise the same issue again in a state post-conviction proceeding. *See*

*Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1996).

If a petitioner presents unexhausted habeas claims to a federal court, and further

state court review of those claims is barred due to state procedural rules, the federal

court will excuse the failure to exhaust and treat the claims as exhausted. *See*

*Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the

technical requirements for exhaustion" because state remedies are no longer available);

*see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Such claims, however, are

procedurally defaulted. *See Coleman*, 501 U.S. at 749; *Lines v. Larkins*, 208 F.3d 153,

160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's

highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent,"[1] then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual

---

[1]*Murray*, 477 U.S. at 496.

5

innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

### C. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it

may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III.   DISCUSSION

Petitioner asserts four Claims in his timely-filed Petition: (1) defense counsel provided ineffective assistance by not informing Petitioner about the possibility of an enhanced sentence under 11 Del. C. § 4205A (D.I. 3 at 5; D.I. 6 at 4-6); (2) defense counsel provided ineffective assistance by not objecting to the State's discussion of aggravating factors at Petitioner's sentencing hearing (D.I. 3 at 7; D.I. 6 at 7); (3) defense counsel provided ineffective assistance by not obtaining an additional full psychiatric evaluation of Petitioner (D.I. 3 at 8; D.I. 6 at 9-10); and (4) the State violated Petitioner's state and federal constitutional rights and Delaware Superior Court Criminal Rule 44 by not appointing counsel to assist him in his Rule 61 proceeding (D.I. 3 at 10; D.I. 6 at 11-15). Enmeshed within Claim Two is Petitioner's argument that the State breached the plea agreement during the sentencing hearing by commenting on

aggravating factors. (D.I. 6 at 7)  Although the ineffective assistance of counsel

argument and breach of plea agreement arguments in Claim Two are based on the

same set of facts, the procedural background for each requires the application of

different standards of review.  For ease of analysis, the Court will address the breach-

of-plea-agreement argument separately, identified as Claim Five in this Opinion.

### A. Claims One, Two, and Three: Ineffective Assistance of Counsel

Petitioner presented the ineffective assistance of counsel allegations contained in

Claims One, Two, and Three to the Superior Court in his Rule 61 motion, and then

again to the Delaware Supreme Court on post-conviction appeal.  The Delaware

Supreme Court agreed with the Superior Court's reasoning and affirmed the Superior

Court's decision.  Given these circumstances, Claims One, Two and Three will only

warrant habeas relief if the Superior Court's decision was either contrary to, or an

unreasonable application of, clearly established federal law.[2]

The clearly established Supreme Court precedent governing ineffective

assistance of counsel claims is the two-pronged standard enunciated by *Strickland v.*

*Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510

---

[2]The Superior Court's December 11, 2017 decision is the last state court decision
containing a reasoned analysis.  Consequently, the Court references the December 11,
2017 Superior Court decision when analyzing Petitioner's arguments under § 2254(d).
*See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher
court affirms a lower court's judgment without an opinion or other explanation, federal
habeas law employs a "look through" presumption and assumes that the later
unexplained order upholding a lower court's reasoned judgment rests upon the same
grounds as the lower court judgment); *Y1st v. Nunnemaker*, 501 U.S. 797, 804 (1991)
(under the "look through" doctrine, "where there has been one reasoned state judgment
rejecting a federal claim, later unexplained orders upholding that judgment or rejecting
the same claim rest upon the same ground.").

(2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's error the result would have been different."  *Id.* at 687-96.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.* at 688. In the context of a guilty plea, a movant satisfies *Strickland*'s prejudice prong by demonstrating that, but for counsel's error, there is a reasonable probability that he would have insisted on proceeding to trial instead of pleading guilty.  *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  A court may choose to address the prejudice prong before the deficient performance prong, and may reject an ineffectiveness claim solely on the ground that the movant was not prejudiced.  *See Strickland*, 466 U.S. at 668. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *See id.* at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, a decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in our cases." *Terry Williams v. Taylor*, 529 U.S. 362, 405 (2000).  Here, the Superior Court initially correctly identified the *Strickland/Hill* standard as governing the instant three ineffective assistance of counsel contentions.  (*See* D.I. 16-9 at 18-19) But, when reviewing Claim Three, the Superior Court cited a preponderance-of-the-

evidence standard for determining prejudice rather than the correct reasonable probability standard. (*See* D.I. 16-9 at 22) As a result, while the Superior Court's analysis of Claims One, Two, and the performance prong of *Strickland* for Claim Three was not contrary to *Strickland*, its analysis of the prejudice prong for Claim Three was contrary to *Strickland*. The Court discusses the effect of the Superior Court's error with respect to Claim Three in its analysis of Claim Three. *See supra* at Section III.A.3.

The Court must also determine if the Superior Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Superior Court's denial of Petitioner's ineffective assistance of counsel allegation through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable." *Id.* And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 101.

### 1. Claim One: Counsel failed to inform Petitioner about enhanced sentence

Petitioner contends that defense counsel failed to advise him about the possibility of receiving an enhanced sentence to life imprisonment under 11 Del. C. § 4205A. He

asserts that the plea agreement did not cite § 4205A and that, had he "known that the State was using [§] 4205[A] as part of the plea agreement, [he] wouldn't have taken the plea and would have went straight to trial, which therefore would have had a different outcome." (D.I. 6 at 5)  To support his argument, Petitioner refers to an October 2015 letter from counsel in which counsel admitted he had previously misinformed Petitioner that he only faced a two-year minimum Level V sentence for some of the counts in the indictment.  (*Id.*)

The Superior Court rejected Petitioner's argument as meritless during his Rule 61 proceeding, explaining:

> Prior to entering his guilty-plea, [Petitioner] filled out a Truth-In-Sentencing Guilty Plea Form in his own handwriting.  On that Form, [Petitioner] acknowledged that he faced a sentence of 25 years to life imprisonment for the charge of Sex Offender Unlawful Sexual Conduct Against a Child.  He also acknowledged that the maximum consecutive penalty for his offenses is life imprisonment.  During the plea colloquy, the Court informed [Petitioner] of the potential sentences, and [Petitioner] stated he was aware of them.  [Petitioner] now claims that Defense Counsel "misled [Petitioner] into signing away his life," but fails to identify any evidence that shows Defense Counsel made any misleading statements regarding [Petitioner's] potential statements.  [Petitioner] is bound by the statements he made during the plea colloquy and on the signed Guilty Plea Form unless he proves otherwise by clear and convincing evidence.  [Petitioner] has not done so.

(D.I. 16-9 at 22-23)

The record reveals the following relevant information.  The Truth-In-Sentencing Guilty Plea Form ("TIS Form"), executed by Petitioner, demonstrates that defense counsel informed Petitioner that he faced a potential life sentence by pleading guilty.  (D.I. 16-10 at 15)  The Plea Agreement and TIS Form demonstrate that defense

counsel informed Petitioner that he faced a minimum mandatory 25-year sentence up to a possible life sentence for the sex offender unlawful sexual contact conviction ("Count Twelve"). (D.I. 16-3 at 18; D.I. 16-10 at 14-15)  The guilty plea transcript contains the State's explicit statement that Petitioner faced a mandatory minimum 25-year sentence for Count Twelve.  (D.I. 16–3 at 25–26)  The transcript also contains: (1) defense counsel's statement that he explained to Petitioner the minimum mandatory time faced on Count Twelve, "as well on the charges if we were to proceed forward to trial" (D.I. 16-3 at 26); (2) Petitioner's clear and explicit statements that he discussed his case with defense counsel, that he answered all the questions on the TIS Form truthfully, that he understood he faced a minimum mandatory 25-year sentence up to a potential life sentence, and that nobody promised him any particular sentence (D.I. 16–3 at 27-32); and (3) Petitioner's clear and explicit statements admitting his guilt and that he understood the constitutional rights he was waiving by pleading guilty.  (*Id.* at 28-33) Finally, Petitioner explicitly stated that he was satisfied with defense counsel's representation and that defense counsel fully advised him of his rights.  (D.I. 16-3 at 33) In short, at no time during the plea colloquy did Petitioner indicate that he was confused about his guilty plea and sentence; in fact, when the Superior Court permitted Petitioner to ask questions, he stated that he had none.  (D.I. 16-3 at 34)

It is well-settled that "[s]olemn declarations in open court carry a strong presumption of verity" that create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Given the aforementioned record, Petitioner's assertions in this proceeding fail to provide compelling evidence that

the statements he made during the plea colloquy should not be presumptively accepted as true. Petitioner, however, attempts to cast doubt on the voluntariness of his plea agreement by referencing an October 23, 2015 letter from counsel (D.I. 16-10 at 16) wherein defense counsel stated that he incorrectly advised Petitioner about the potential sentence for Count Twelve. In the letter, defense counsel explained that, while, "under normal circumstances," Petitioner's ten charges for "Sex Offender Unlawful Sexual conduct with a Child under 11-77A, Charges XI-XX" would each carry  a "2 year minimum," Petitioner faced a mandatory 25-year minimum because of his 2002 conviction for second degree rape and because the victim in this case was under 14 years of age. (D.I. 16-10 at 16)  Defense counsel further stated,

> I had sent you a letter on April 30, 2015 erroneously informing you they carried 2 years minimum.  Because of Title 11 Section 4205A, that was incorrect.  However, as we talked about prior to accepting the plea and at the plea hearing, the charge you pled to carries a minimum/mandatory of 25-years incarceration, not 2.  This is reflected on your plea agreement and on the TIS form. The State is not seeking a habitual offender sentence.

(D.I. 16-10 at 16)

Contrary to Petitioner's implicit assertion, defense counsel's October 2015 letter does not provide compelling evidence overcoming the *Blackledge* presumption that Petitioner's representations to the Superior Court were truthful.  The TIS Form and guilty plea transcript demonstrate that defense counsel had correctly advised Petitioner about a possible life sentence and the mandatory minimum 25-year sentence by the time Petitioner entered his guilty plea in September 2015.  Thus, the Court concludes that the Delaware State Courts reasonably applied *Blackledge* in holding that Petitioner

13

was bound by the representations he made during the plea colloquy and on the TIS Form.

In turn, the Court concludes that the Superior Court reasonably determined the facts and reasonably applied *Strickland* and *Hill* to Petitioner's case when concluding that the advice defense counsel provided to Petitioner regarding his potential sentence did not amount to constitutionally ineffective assistance. Accordingly, the Court will deny Claim One for failing to satisfy § 2254(d).

### 2. Claim Two: Counsel failed to object to State's comments at sentencing

In Claim Two, Petitioner asserts that defense counsel provided ineffective assistance during sentencing by not objecting when the State mentioned aggravating factors for enhancing Petitioner's sentence under § 4205A. Petitioner presented this same argument to the Superior Court in his Rule 61 motion. Proceeding directly to the prejudice prong of the *Strickland* analysis, the Superior Court determined that there was "no reasonable probability that the sentencing judge would have" issued a lesser sentence if defense counsel had objected, because: (1) the State had recommended the minimum mandatory amount of incarceration in accordance with the plea agreement; (2) the sentencing judge was aware of Petitioner's past conduct; and (3) the sentencing judge was not bound by the State's recommendation, had not believed Petitioner's expression of remorse, and was concerned that Petitioner posed a danger to children. (D.I. 16-9 at 19-21)

The Superior Court's denial of the instant ineffective assistance Claim for lack of prejudice was not based upon an unreasonable application of *Strickland*. At

14

sentencing, the State prefaced its remarks about Petitioner by stating that "there is certainly criticism sometimes of minimum-mandatory sentences . . . And [the State] would just like to explain to the Court why [the State] felt that 25 years, at least the sentence no less than 25 years was appropriate in this case." (D.I. 16-3 at 37)  The State then recited the offenses for which Petitioner was being sentenced and explained why the State had sought a plea to a crime that required a 25-year minimum mandatory sentence. (Id.)  The State provided comments from the victim's mother, and reminded the court that Petitioner was on probation with GPS monitoring at the time of this crime. (Id. at 37-38)  The State also described Petitioner's criminal acts in earlier cases, specifically noting any similarities to the present case: (1) prior to 1991, Petitioner had been convicted of two burglaries, theft, carrying a concealed dangerous instrument, and assault second degree; (2) in 1991, Petitioner was convicted of unlawful sexual contact involving an 11-year-old girl; and (3) in 2002, Petitioner was convicted of second degree rape with a victim under 12 years of age. (Id. at 37)  The sentencing court interrupted the State to clarify that the victim in the latter case was actually nine years old. (Id.)

Petitioner did not object to any of the State's remarks.  The State concluded by saying, "Taking all that into account, Your Honor, it seemed [] that any  sentence less than 25 years is inadequate.  So, for these reasons, Your Honor, the State stands by the recommendation that it made at the time of the plea." (D.I. 16-3 at 38)

After hearing from defense counsel and Petitioner, the sentencing court addressed Petitioner as follows:

> I understand that you had a difficult upbringing, one in which you were the victim of child abuse. And I agree that the victims of child abuse are frequently perpetrators of abuse on children when they get older themselves. [...] But you do have a horrendous criminal record quite apart from the abuse of children. But your abuse of children is absolutely hard. A 1990 conviction for the essentially unlawful conduct – contact with an 11-year-old, a later conviction of a rape of a nine-year-old, and, now, another nine-year-old victim.
>
> I appreciate, although I don't actually believe your expression of remorse. I appreciate the fact that you tell me you want to reform. I don't think that you can. I think that there's no child who is safe as long as you're outside of prison.

(D.I. 16-3 at 41) The court then sentenced Petitioner to life in prison, and an additional eight years in prison, suspended for Level III probation.

Notably, the information provided by the State had been previously provided to the sentencing court in the PSI report. (*See* D.I. 16-3 at 38) The sentencing court's comments during the sentencing hearing—for instance, its clarification of the age of one of Petitioner's former victims—indicate that the court was already familiar with Petitioner's history even without the State's recitation of facts. The court's comments also provide a basis for concluding that the sentencing court based the sentence on Petitioner's record.

Under Delaware law, the sentencing court had broad discretion in sentencing Petitioner and was not required to consider any mitigation if the court concluded that the evidence was not credible. *See Wynn v. State*, 23 A.3d 145, 149 (Del. 2011). Thus, after viewing the State's comments in context with the sentencing transcript as a whole, while simultaneously viewing the Superior Court's decision through the doubly deferential lens applicable to ineffective assistance of counsel claims on habeas review,

16

the Court cannot conclude that the Superior Court unreasonably determined the facts or unreasonably applied *Strickland* in holding that Petitioner failed to demonstrate prejudice. Accordingly, the Court will deny Claim Two.

### 3. Claim Three: Counsel failed to obtain an additional full psychiatric evaluation

In Claim Three, Petitioner contends that defense counsel provided ineffective assistance by not obtaining an additional full psychiatric evaluation before his guilty plea and sentencing. Petitioner asserts that he was diagnosed with brain damage as an adolescent at the Governor Bacon Health Center and defense counsel "needed to know all of the mental health factors present, not just unqualified observations." (D.I. 6 at 9) Petitioner complains that, even though defense counsel retained a private doctor to perform an additional psychological evaluation to determine if Petitioner should raise an affirmative defense, the evaluation never occurred. He contends that the jury would have found him guilty but mentally ill under 11 Del. C. § 401(a) because "they would have found that, at the time of the conduct charges, a[s] a result of mental illness or mental defect, [Petitioner] . . . lacked substantial capacity to appreciate the wrongfulness of [his] conduct." (D.I. 6 at 10)

Petitioner presented this Claim to the Superior Court in his Rule 61 motion. The Superior Court denied the Claim, explaining

> [t]his allegation is conclusory and not supported by the record. The record shows that a psycho-forensic evaluation was conducted, as well as a presentence investigation. Both contained mitigation information, and Defense Counsel used this information at the time of sentencing. Defense Counsel avers in his Affidavit that he "did not feel a mental health

17

evaluation would be beneficial prior to sentencing once the plea was accepted."

There is no indication in the record that [Petitioner] had any mental health issues that rose to the level of a viable affirmative defense. [Petitioner] himself does not claim he had any mental health issues or point to any facts suggesting a mental illness defense would likely have succeeded at trial. Once [Petitioner] decided to accept the plea, it was not unreasonable for Defense Counsel to no longer pursue a further mental evaluation, and [Petitioner] does not claim he requested such an evaluation or insisted on pursuing a mental illness defense before he entered the guilty plea.  Before sentencing, the Court had the psycho-forensic report and full presentence investigation which it reviewed and relied upon in formulating the sentence.  Defense Counsel's decision to not pursue a mental health evaluation did not fall below an objective  standard  of  reasonableness  under  the circumstances presented, and assuming arguendo it did, [Petitioner] has failed to prove by a preponderance of evidence that the evaluation would have resulted in a lesser sentence.

(D.I. 16-9 at 21-22)

It is well-settled that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S. at 690. The record demonstrates that defense counsel's decision to not pursue a further mental health evaluation was made after thoroughly investigating the law and facts.  For instance, defense counsel's supplemental Rule 61 affidavit asserts that Petitioner underwent a psycho-forensic evaluation, and defense counsel attached to that affidavit a September 2015 letter from a psycho-forensic evaluator with defense counsel's office.  (D.I. 16-12 at 55, 63, 66) Nothing in the psycho-forensic evaluator's letter indicated that Petitioner had any mental health issues that would have provided the basis for an affirmative defense.  Defense counsel also explained that a "further

18

mental evaluation [to determine an affirmative defense] was explored" but "was not

conducted" once plea negotiations were entered into, (D.I. 16-12 at 63), indicating

defense counsel's awareness that a knowing and voluntary guilty plea waives

affirmative defenses. *See Miller v. State*, 2014 WL 7010949, at *4 (Del. Dec.9, 2014).

   In addition, as defense counsel explained during sentencing, he and Petitioner

engaged in several conversations over the course of year, from which defense counsel

gleaned that Petitioner understood his actions were wrong. (D.I. 16-3 at 8)  Defense

counsel also explained that, while Petitioner had impulse-control issues, those issues

did not completely absolve him of culpability. (*Id.*)  Importantly, when given the

opportunity to address the sentencing court, Petitioner took "full responsibility for [his]

wrongdoing" and apologized to the victim and her family. (D.I. 16-3 at 39)  This record

does not support Petitioner's instant allegation that he had a mental illness that

rendered him unable to appreciate the wrongfulness of his actions.  Thus, the Superior

Court reasonably applied *Strickland* in concluding that defense counsel did not perform

deficiently by failing to order an additional psychiatric evaluation.

   Turning to the prejudice inquiry under *Strickland*, the Court has previously

explained that the Superior Court applied an incorrect standard when determining if

Petitioner was prejudiced by defense counsel's failure to order an additional psychiatric

evaluation. *See supra* at III.A.  On its own, this error does not entitle Petitioner to

habeas relief.  Rather, since the Court's determination that the Superior Court

reasonably applied the correct standard when analyzing the performance prong of the

*Strickland* test for Claim Three provides a sufficient basis to deny Claim Three, the

result of the state court's use of an incorrect standard in this case is that the Court will review the issue of prejudice *de novo* and not under the deferential standard of § 2254(d)(2). *See Moody v. Polk*, 408 F.3d 141, 147 (4th Cir. 2005) ("because the state court's holding on the issue of performance would alone suffice to defeat Moody's ineffective assistance claim, the decision of the state court would only be contrary to or an unreasonable application of *Strickland* if the state court's evaluation of both prongs were deficient under this standard. Therefore, we review the state court's decision of the performance prong of the *Strickland* inquiry under the deferential AEDPA standard. Because the state court applied the wrong standard to evaluate prejudice, we do not defer to its analysis of that prong but instead review it *de novo*.")

Once again, the Court notes that the sentencing court was provided with the psycho-forensic evaluation and the pre-sentence investigation prior to the sentencing hearing. (D.I. 16-3 at 39; 16-9 at 21)  During the sentencing hearing, the court doubted Petitioner's remorsefulness, noted his horrendous criminal record in addition to the sexual offenses, concluded that his abuse of children had been established based upon his criminal history, and thought he posed a danger if not incarcerated. (D.I. 16-3 at 41) This record reflects that the court's sentencing decision was primarily influenced by Petitioner's recidivism and the need to protect public safety. (D.I. 16-3 at 41)  Although an additional mental health evaluation may have provided "some insight into the reasons for the offense'[s]," Petitioner has not demonstrated a reasonable probability that an additional evaluation "would have sufficiently altered the balance of information before the Court to have resulted in a lower sentence." *United States v. DeLuca*, 2012

WL 5902555, at *14 (E.D. Pa. Nov. 26, 2012) (finding that the defendant did not show that counsel was ineffective or that he suffered prejudice by trial counsel's failure to obtain an additional psychological evaluation for sentencing).

Based on the forgoing, the Court concludes that the Superior Court did not unreasonably apply *Strickland* in ruling that defense counsel did not perform deficiently, and independently concludes, under *de novo* review, that Petitioner was not prejudiced by defense counsel's failure to order an additional mental illness evaluation. Therefore, the Court will deny Claim Three.

### B. Claim Four: The Superior Court Violated Petitioner's Federal and State Constitutional Rights and State Court Criminal Rule 44 by not Appointing Counsel to Represent Petitioner in his Rule 61 Proceeding

Next, Petitioner argues that the State violated his federal and state due process rights, equal protection rights, and his right to an appeal by not appointing counsel to assist him in his Rule 61 proceeding. According to Petitioner, the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1,11-12 (2012) created a new constitutional right requiring the appointment of counsel in initial-review collateral proceedings. Petitioner also contends that the Superior Court violated Superior Court Criminal Rule 44 by not appointing counsel. (D.I. 6 at 12-13)

As an initial matter, *Martinez* did not create a new constitutional right to representation during a state collateral proceeding. *See Martinez*, 566 U.S. at 15-16 (explicitly stating that the Court's ruling was an equitable one and not a constitutional ruling that would provide defendants a freestanding constitutional claim). Moreover, although couched in constitutional terms, Claim Four challenges the procedure followed

by the Superior Court during Petitioner's state post-conviction proceeding and is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67–8 (1991); *Smith v. Phillips*, 455 U.S. 209, 211 (1982); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir.1997).  The "federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's *collateral* proceedings does not enter into the habeas calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir.1998) (emphasis added).  Accordingly, because the instant Claim challenges the Superior Court's application of state procedural rules in a state court collateral proceeding, the Court will deny Claim Four for failing to assert a proper basis for federal relief.

### C. Claim Five: The State Breached the Plea Agreement During the Sentencing Hearing

As previously explained, in Claim Two, Petitioner also contends that the State breached the plea agreement and violated his due process rights by discussing the aggravating factors during sentencing.  *See supra* at Section III.  Petitioner raised his breach of plea agreement/violation of due process argument on direct appeal.  The Delaware Supreme Court reviewed the argument for plain error because Petitioner did not object to the State's comments "at sentencing or otherwise preserve his claim of error." *Lawhorn*, 2016 WL 6649222, at *2.  By explicitly applying the plain error doctrine to Claim Five on direct appeal, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255,263–64 (1989) that its decision rested on state law grounds.  In turn, Delaware's plain error doctrine constitutes an

22

independent and adequate state procedural rule for procedural default purposes.[3]  *See*

*Campbell v. Burris*, 515 F.3d 172, 177–82 (3d Cir.2008).  Accordingly, Claim Five is

procedurally defaulted, meaning that the Court cannot review its merits absent a

showing of cause and prejudice, or a miscarriage of justice.

Petitioner appears to assert ineffective assistance of defense counsel as cause

for his default of the instant argument, as illustrated by Claim Two's contention that

defense counsel was ineffective for failing to object to the State's discussion of

aggravating factors during the sentencing hearing.  "A successful claim of ineffective

assistance of counsel ... satisfies the 'cause' prong of a procedural default inquiry."

*United States v. Garth*, 188 F.3d 99, 107 (3d Cir.1999).  The Court has already

determined that defense counsel's failure to object to the State's comments about the

aggravating factors during Petitioner's sentencing hearing did not rise to the level of

constitutionally ineffective assistance.  *See supra* at Section III.A.2.  Therefore, defense

---

[3]In its decision affirming the Superior Court's denial of Petitioner's Rule 61 motion, the Delaware Supreme Court stated: "We agree with the Superior Court's conclusion that [Petitioner] failed to establish either cause or prejudice to substantiate his claims that his trail counsel was ineffective." *Lawhorn*, 2018 WL 4378705, at *1.  Since the Superior Court did not deny any of Petitioner's ineffective assistance of counsel claims as procedurally defaulted, it is unclear why the Delaware Supreme Court mentioned cause and prejudice.  The Delaware Supreme Court may have been referring to Petitioner's breach-of-plea-agreement argument that was only reviewed for plain error on direct appeal and, relatedly, may have been making an implicit determination that defense counsel's failure to object to the State's comments at sentencing did not provide a basis for excusing his default of the breach-of-plea-agreement claim.  Regardless of the Delaware Supreme Court's reason for mentioning cause-and-prejudice in its Rule 61 appellate decision, the Delaware Supreme Court's application of the plain error standard to Claim Five during Petitioner's direct appeal provides a sufficient basis to conclude that Petitioner procedurally defaulted the instant Claim.

counsel's inaction cannot constitute cause for Petitioner's procedural default of Claim Five.

Petitioner's failure to establish cause eliminates the need to address the issue of prejudice. Additionally, Petitioner's default cannot be excused under the miscarriage of justice exception to the procedural default doctrine, because he has failed to provide new reliable evidence that can establish his actual innocence. Accordingly, the Court will deny Claim Five as procedurally barred from habeas review.

### 1. Alternate merits review

The State addresses Petitioner's breach-of-plea-agreement argument in its response to Claim Two, primarily arguing that defense counsel's failure to object to the State's comments did not constitute deficient performance under *Strickland*'s performance prong because the State's comments did not amount to a breach of the plea agreement. (*See* D.I. 15 at 22-25) The State properly notes that Petitioner presented his breach-of-plea argument on direct appeal and also that the Delaware Supreme Court cited *Santobello v. New York*, 404 U.S. 257 (1971) when opining that "the State's comments failed to rise to the level of subverting the integrity of the plea bargaining process." *Lawhorn*, 2016 WL 6649222, at *3; *see* (D.I. 15 at 22-24) Nevertheless, the State fails to acknowledge that the Delaware Supreme Court treated the breach-of-plea argument as procedurally defaulted, as demonstrated by its application of the plain error standard. To the extent the State's silence concerning the Delaware Supreme Court's application of the plain error standard constitutes a waiver of

Petitioner's procedural default, the Court will exercise prudence and address the breach-of-plea argument on the merits.

Pursuant to *Santobello,* plea agreements are analyzed under contract law standards. *See Santobello,* 404 U.S. at 261-63; *United States v. Nolan-Cooper*, 155 F.3d 221, 236 (3d Cir. 1998). "When a criminal defendant claims that the government breached its plea agreement, the first step is to define what the government agreed to do." *Dunn v. Colleran*, 247 F.3d 450, 458 (3d Cir. 2001). Notably, the Constitution does not require a prosecutor to "enthusiastically" make an agreed-upon sentencing recommendation. *See United States v. Benchimol*, 471 U.S. 453, 455-56 (1985). While *Santobello* does not address implicit repudiations of a plea agreement, the Third Circuit has recognized that "the government may breach a plea agreement with statements that either contradict or implicitly undermine its obligations," and advises that such challenged statements should be construed "in context and against the entire backdrop of the proceedings." *United States v. Wolfe*, 472 F. App'x 141, 145 (3d Cir. 2012).

After reviewing the record within the foregoing legal framework, the Court concludes that the State's comments at sentencing did not violate the plea agreement because: (1) the State explicitly recommended the 25-year mandatory minimum sentence; (2) the State never suggested that the court should increase Petitioner's sentence based upon its comments or the information in the PSI; (3) contrary to Petitioner's contention, the plea agreement did not prohibit the State from making any remarks or reciting any aggravating factors at sentencing; and (4) the State's remarks were not inflammatory and, instead, relied upon facts or common sense. Accordingly,

the Court alternatively concludes that the Delaware Supreme Court reasonably applied clearly established federal law when holding that the State's did not breach the plea agreement.

### D. Pending Motions

Petitioner has filed two Motions to Appoint Counsel.  (D.I. 25; D.I. 27)  In light of the Court's decision that the Petition should be denied, the Court will dismiss Petitioner's Motions as moot.

## V.   CERTIFICATE OF APPEALABILITY

The Court must decide whether to issue a certificate of appealabilty.  *See* 3d Cir. L.A.R. 22.2 (2011).  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Additionally, if a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484.

The Court has concluded that the instant Petition fails to warrant federal habeas relief.  Reasonable jurists would not find this conclusion to be debatable.  Accordingly, the Court will not issue a certificate of appealability.

## VI.   CONCLUSION

For the reasons discussed above, the Court will deny the instant Petition without an evidentiary hearing.  The Court will issue an Order consistent with this Memorandum Opinion.